IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FERRELLGAS, L.P. and            )
BLUE RHINO GLOBAL SOURCING, INC. )
                                )
            Plaintiffs,         )
                                )
      v.                        )            1:16CV259
                                )
BEST CHOICE PRODUCTS a/k/a      )
SKY BILLIARDS, INC.,            )
                                )
            Defendant.          )

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiffs initiated this action on March 31, 2016, alleging trademark infringement and unfair competition under 15 U.S.C. §§ 1114 and 1125, as well as unfair and deceptive trade practices under N.C. Gen Stat. § 75 *et seq.* (ECF No. 1.) Before the Court are Plaintiffs' Motion for Summary Judgment, (ECF No. 27), Plaintiffs' Motion for Sanctions, (ECF No. 29), and Defendant's Motion for Leave to Amend Defendant's Responses to Plaintiffs' First Set of Requests for Admissions ("Motion to Amend"), (ECF No. 31). For the reasons set forth below, Plaintiffs' Motion for Summary Judgment will be granted in part and denied in part; Plaintiffs' Motion for Sanctions will be granted; and Defendant's Motion to Amend will be denied.

## I.    BACKGROUND

Plaintiff Ferrellgas, L.P. ("Ferrellgas") describes itself as a propane provider, "serving approximately one million customers throughout the United States and Puerto Rico." (ECF

No. 1 ¶ 10.)  Plaintiff Blue Rhino Global Sourcing, Inc. ("Blue Rhino"), a subsidiary of Ferrellgas, describes itself as "a leading distributor of outdoor living accessories, including outdoor fireplaces, heaters, grills, and related products."  (*Id.* ¶ 11.)

Ferrellgas owns the following trademarks: (i) U.S. Trademark Registration No. 2,912,949, issued on December 21, 2004 for the mark "BLUE RHINO," which was first used in commerce as early as 1994, (*id.* ¶ 12; ECF No. 32 at 6); and (ii) U.S. Trademark Registration No. 3,160,502, issued on October 17, 2006 for the mark "BLUE RHINO," which was first used in commerce as early as 2000, (ECF No. 1 ¶ 13; ECF No. 32 at 6).  Both marks have been accorded incontestable status under 15 U.S.C. § 1065.[1]  (ECF No. 1 ¶¶ 12, 13; ECF No. 32 at 6.)  Blue Rhino uses the mark "BLUE RHINO" in commerce "in connection with outdoor fireplaces, among other things."  (ECF No. 1 ¶ 14; ECF No. 32 at 6.)

In 2012, Blue Rhino designed a "Uniflame Hex Shaped Outdoor Fire Bowl" fireplace product ("Hex Fireplaces") and selected Dingfu, a company in Gaungzhou, China, as its manufacturer for the product.  (ECF No. ¶¶ 16–17.)  In 2015, Blue Rhino made advance payments of over $100,000 to Dingfu to manufacture approximately 2,600 Hex Fireplaces.  (*Id.* ¶ 17.)  Following these advance payments, "but prior to shipment of the Hex Fireplaces . . . Dingfu ceased operations and was seized by the Chinese government."  (*Id.* ¶ 18.)  Blue

---

[1] Under 15 U.S.C. § 1065, a registered trademark becomes incontestable if: (i) it has been registered and in continuous use for five consecutive years; (ii) there have been no final, adverse decisions regarding the owner's right to register the mark; (iii) there are no pending proceedings in the United States Patent and Trademark Office regarding the owner's rights under the mark; (iv) an affidavit has been filed confirming that goods have been in continuous use under the mark; and (v) the mark is not generic.  15 U.S.C. § 1065.  Incontestability serves as "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the mark in commerce."  15 U.S.C. § 1115(b); *Shakespeare Co. v. Silstar Corp. of Am., Inc.*, 9 F.3d 1091, 1094 (4th Cir. 1993).

Rhino then retained a different manufacturer for its Hex Fireplaces. (*Id.*) Blue Rhino offers its Hex Fireplaces for sale at the price of $125.99 through Amazon, among other online retailers. (*Id.* ¶ 19; ECF No. 1-1.)

Defendant Best Choice Products a/k/a Sky Billiards, Inc. ("Sky Billiards" or "Defendant") imports, markets, and sells "a variety of household items, including outdoor fireplaces, through its own website and through online marketplaces such as Amazon, eBay, Rakuten, Newegg, and Sears." (ECF No. 1 ¶ 15; ECF No. 16 ¶ 15; *see* ECF No. 32 at 1.) Prior to filing the instant lawsuit, Plaintiffs learned that Defendant was advertising and selling a fireplace product, known as the "Best Choice Products BCP Hex Shaped Outdoor Home Garden Backyard Fireplace" ("BCP Fireplace"), through online retailers, including Amazon, at a price of $71.95. (ECF No. 1 ¶ 20; ECF No. 1-2; ECF No. 32 at 1.) Defendant purchased and imported this product from a Chinese factory named Foshan Yuelong Metal ("Foshan"). (ECF No. 32 at 1.) Defendant's BCP Fireplaces were shipped to customers with an owner's manual which included the BLUE RHINO mark, as well as language stating that the product's warranty was provided by Blue Rhino. (ECF No. 1 ¶¶ 21–23; ECF No. 32 at 2; *see* ECF No. 11 ¶ 4.) The owner's manual also provided Blue Rhino's website and phone number. (ECF No. 1 ¶ 22; ECF No. 32 at 2; *see* ECF No. 11 ¶ 4.)

Shortly after filing the instant lawsuit, Plaintiffs also filed a Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion"), (ECF No. 3). Plaintiffs withdrew their TRO Motion based on Defendant's representations that, among other things, it: (i) "ceased displaying, distributing, shipping and/or selling products accompanied by [an] owner's manual referencing Ferrellgas's BLUE RHINO mark and Blue Rhino's name, website

3

address, or telephone number;" (ii) would "not display, distribute, copy, prepare derivative works based upon, ship and/or sell its current owner's manual or any other owner's manual or other materials that reference Ferrellgas's BLUE RHINO mark or Blue Rhino's name, website address, or telephone number;" and (iii) would "immediately send a letter to inform all of its customers who have already purchased Sky Billiards, Inc.'s Hex Fireplace product . . . that the product they purchased from Sky Billiards did not originate from [Plaintiffs] and that such customers should not contact [Plaintiffs] for product assembly, registration, replacement parts, returns, or warranty claims, and that [Plaintiffs] have no obligation to provide service or assistance with [the same]." (ECF No. 11 ¶¶ 4–6; ECF No. 12; *see* ECF No. 32 at 2.)

On June 21, 2016, the Court entered an Order Approving Joint Rule 26(f) Report ("Scheduling Order"). (ECF No. 21.) Among other things, the Order set a discovery deadline of December 21, 2016, as well as deadlines for service of each party's Rule 26 initial disclosures. (*See id.*; ECF No. 20 at 2.) Plaintiffs' initial disclosures were due no later than "[t]hree months prior to the close of discovery," and Defendant's initial disclosures were due no later than "[t]wo months prior to the close of discovery." (ECF No. 20 at 2; *see* ECF No. 21.) Plaintiffs served their Rule 26 Initial Disclosures on June 22, 2016. (ECF No. 27-2 at 9–13.) Defendant failed to serve any Rule 26 initial disclosures. Plaintiffs also served their First Set of Requests for Production of Documents and Things and its First Set of Requests for Admission on July 13, 2016 and September 13, 2016, respectively. (*Id.* at 15–51.) Plaintiffs' discovery requests were served via US Mail, addressed to the Winston Salem, North Carolina office of Kenneth Otis, Defendant's counsel. (ECF No. 27-2 at 30; 51.) Defendant failed to serve responses to any of Plaintiffs' discovery requests, or to serve any discovery requests of its own. Plaintiffs

4

subsequently filed their Motion for Summary Judgment on December 9, 2016, (ECF No. 27), followed by a Motion for Sanctions on January 7, 2017, (ECF No. 29). Defendant then, on January 8, 2017, filed a Motion to Amend its responses to Plaintiffs' First Set of Requests for Admissions. (ECF No. 31.) Because the admissions at issue are integral to the resolution of the Motion for Summary Judgment, the Court will first address Defendant's Motion to Amend.

## II.     DISCUSSION

A.     <u>Defendant's Motion for Leave to Amend Defendant's Responses to Plaintiffs' First Set of Requests for Admissions</u>

Under Rule 36, the parties to litigation may request admissions from their adversaries "regarding purely factual matters or the application of law to facts, but not matters of law." *Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 F. App'x 169, 172 (4th Cir. 2005) (unpublished); *see* Fed. R. Civ. P. 36(a). "The purpose of such admissions is to narrow the array of issues before the court, and thus expedite both the discovery process and the resolution of the litigation." *Adventis*, 124 F. App'x at 172. "A matter admitted under this rule is conclusively established. . . ." Fed. R. Civ. P. 36(b); *see Adventis*, 129 F. App'x at 173 ("[O]nce a matter that is properly [the] subject of an admission under Rule 36(b) has been admitted during discovery, the district court is not free to disregard that admission."). "This conclusive effect applies equally to those admissions made affirmatively and those established by default, even if the matters admitted relate to material facts that defeat a party's claim." *Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120–21 (5th Cir. 1991) (footnotes omitted).

5

The Fourth Circuit has long held that unanswered requests for admissions are deemed admitted. *See Batson v. Porter*, 154 F.2d 566, 568 (4th Cir. 1946). A court may, however, permit withdrawal or amendment of admissions only if: (i) the withdrawal or amendment would promote the presentation of the merits of the action; and (ii) the court is not persuaded that it would prejudice the party that has obtained the admissions. Fed. R. Civ. P. 36(b). The Court must consider these two factors when determining whether to allow a party's untimely response to requests for admissions. *See Bailey v. Christian Broad. Network*, 483 F. App'x 808, 810 (4th Cir. 2012) (unpublished per curiam decision) (concluding that a district court's "failure to consider the Rule 36(b) factors in ruling on a motion to file RFAs out of time constitutes an abuse of discretion").

### 1. *Presentation of the merits of the action*

As to the first Rule 36(b) factor, Defendant argues that "allowing Sky [Billiards] to amend [its] responses will have significant effect on the Court's ability to adjudicate this matter on the merits." (ECF No. 31-1 at 4.) Plaintiffs argue in response that allowing Defendant to amend its responses will "actually [have] <u>no</u> effect as Defendant does not have any evidence to offer . . . [because] Defendant failed to make its initial disclosures," and likewise, Defendant failed to produce any documents or information during discovery. (ECF No. 34 at 16.) The Court agrees with Plaintiffs.

It is undisputed that Defendant failed to provide the mandatory Rule 26 initial disclosures in accordance with the Court's Scheduling Order. *See* Fed. R. Civ. P. 26 advisory committee's notes to 1993 amendment (explaining that initial disclosures are "the functional equivalent of court-ordered interrogatories"). "The purpose of Rule 26(a) is to allow the

parties to adequately prepare their cases for trial and to avoid unfair surprise." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014). Where a party has failed to make the disclosures required under Rule 26(a), Rule 37(c) dictates that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In determining whether a party's failure to make the required disclosures was substantially justified or harmless, the Court considers the following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). Defendant bears the burden of establishing that its omission was justified or harmless, *see id.* at 596, yet Defendant has made no showing or argument that its failure was, in fact, substantially justified or harmless. The first four factors, which address the issue of harmlessness, tend to weigh against Defendant primarily because, at this stage in the litigation, with the discovery deadline having long-since passed, Plaintiffs are foreclosed from an opportunity to test any witnesses or evidence that Defendants may, at this late date, attempt to introduce in this case. Moreover, given that Defendant has offered no explanation whatsoever for its failure to provide the required initial disclosures of evidence, the fifth factor, which addresses whether the failure was substantially justified, likewise weighs against Defendant. Accordingly, the Court finds that the Defendant's failure to make the required disclosures was neither harmless nor substantially justified, and Defendant is, therefore,

precluded from using any such information or witness to provide evidence at trial or in support of its motions.

In addition to its failure to provide mandatory initial disclosures, Defendant also failed to participate in discovery at all during the allotted discovery period. Thus, because Defendant will have no admissible evidence to substantiate its claims and/or defenses, a presentation of this case on the merits is not an option. *See J&J Sports Prods., Inc. v. Mumford*, No. DKC 10-2967, 2012 WL 1409588, at *3 (D. Md. Apr. 20, 2012).

### 2. *Prejudice to the opposing party*

As to the second Rule 36(b) factor – whether there is prejudice to the party relying on the admissions – courts weigh "the difficulty the party opposing the motion to withdraw will face as a result of the sudden need to obtain evidence to prove the matter it had previously relied upon as answered." *Id.* at *4 (quotation omitted); *see also Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 154 (6th Cir. 1997) ("[Prejudice] is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Prejudice under Rule 36(b), rather, relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission" (quotation and citation omitted)). As Defendant argues, a party's reliance on a deemed admission in preparing a summary judgment motion does not, without more, constitute prejudice to justify denial of a motion to withdraw or amend the admissions. (ECF No. 31-1 at 4–5.) However, "[w]ith the passage of time and as each moment for response . . . slipped by, [Defendant's] burden for withdrawal of the deemed admissions is raised and the prejudice to [Plaintiffs] is increased." *In re Fisherman's Wharf Fillet, Inc.*, 83 F. Supp. 2d 651, 661 (E.D. Va. 1999).

8

To evaluate whether the party that relied on the admissions will suffer prejudice, courts consider a number of factors including, among others: (i) the number of months/length of time after the deadline to respond to requests for admissions; (ii) the timing of the motion for withdrawal or amendment of admissions in relation to the discovery deadline; (iii) whether the relying party had forgone discovery based on the deemed admissions; (iv) the moving party's responsiveness, or lack thereof, to discovery requests or communications; and (v) whether the moving party received notice from the relying party or the court of the consequences of failing to respond to discovery requests. *See Precision Franchising, LLC v. Gatej*, No. 1:12cv158 (JCC/TCB), 2012 WL 6161223, at *7 (E.D. Va. Dec. 11, 2012) (citing cases). Plaintiffs contend that because "[e]ach of these factors are present here," they will be prejudiced if Defendant is allowed to amend its responses. (ECF No. 34 at 17.) Defendant contends that Plaintiffs "still [have] ample time to prepare its case based on Sky's Amended Responses and will not be prejudiced at trial." (ECF No. 31-1 at 5.) The Court agrees with Plaintiffs.

Here, Plaintiffs' Requests for Admissions were served on September 13, 2016, (ECF No. 27-2 at 32, 51), with Defendant's responses due 30 days later, on October 13, 2016. Defendant contends that it failed to respond to Plaintiffs' Requests for Admissions (as well as Plaintiffs' document requests) because "neither of [Sky Billiards'] attorneys received or were aware that discovery had been served until well after the response date had past [sic]." (ECF No. 31-1 at 2–3.) Defendant further states that its local counsel, Kenneth Otis, (to whom the Requests were sent) "has no history of issues or disruptions with receiving U.S. mail at his office," and the Certificate of Service on Plaintiffs' Requests "correctly reflected" Mr. Otis' office address. (*Id.* at 3.) Nonetheless, Defendant states that it learned of the written

9

discovery, through its counsel, who "discovered the Motion for Summary Judgment and the accompany[ing] exhibits [on] the Court's electronic docket."[2]  (ECF No. 31-3 ¶ 7; ECF No. 31-4 ¶ 5.)

The Court notes that its Case Management/Electronic Case Files ("CM/ECF") docket reflects that electronic notice of the filing of Plaintiffs' Motion for Summary Judgment was sent to all counsel, including Mr. Welch and Mr. Otis, on December 9, 2017.  Even assuming that this was, in fact, Defendant's first notice of outstanding, unanswered discovery requests served by Plaintiffs, Defendant made no efforts to contact Plaintiffs for an extension of time to respond to the Requests for Admissions and/or an extension of the discovery deadline (which, at that time, had not yet expired).  Nor did Defendant promptly move the Court *at that time* for leave to amend its responses to the Requests for Admissions.  Rather, Defendant waited until January 8, 2017, 30 days after notice was provided via CM/ECF of the outstanding, unanswered Requests for Admissions, before filing the instant Motion to Amend. (*See* ECF No. 31.)  In addition, the trial of this matter is scheduled for October 2, 2017, (*see* ECF No. 26), and, because of Defendant's failure to respond to Plaintiffs' discovery requests and its failure to serve any discovery requests of its own, no other meaningful discovery has occurred during the discovery period.  Thus, if the Court were to allow Defendant's Motion to Amend, with the discovery period now closed, Plaintiffs, having reasonably relied on the deemed admissions in determining how to proceed with discovery and summary judgment, will be prejudiced in that they will be unable to engage in any discovery related to the matters

---

[2] The Declarations provided by Defendant in support of its Motion to Amend are silent as to the precise date on which counsel claims they "discovered" the Motion for Summary Judgment and its accompanying exhibits on the Court's electronic docket.  (*See* ECF Nos. 31-3, 31-4.)

10

which are the subject of the admissions. *See J & J Sports Prods., Inc.*, 2012 WL 1409588, at \*4 (stating that when a party foregoes discovery and reasonably relies "upon default admissions and then uses those admissions as a basis for summary judgment, withdrawal of the admissions may be prejudicial"); *BB&T Co. v. Deutz-Allis Corp.*, 120 F.R.D. 655, 659 (E.D.N.C. 1988) (finding that plaintiff would be prejudiced if defendants were allowed to withdraw admissions thereby interjecting new and significant issues upon which no discovery had been undertaken).

Even assuming *arguendo* that, as Defendant contends, its attorneys did not receive Plaintiffs' discovery and were not aware that discovery had been served until after the response deadline, the Court cannot ignore the nature of Defendant's participation in this litigation, or lack thereof,[3] prior to the close of discovery which has been minimal, at best, and, perhaps, even dilatory. This, coupled with the Court's consideration above of the Rule 36(b) factors, weighs decidedly against granting Defendant leave to amend.

Accordingly, the Court concludes that Defendant has failed to meet the requirements of Rule 36(b) for withdrawal or amendment of the default admissions. Thus, the Court will deny Defendant's Motion to Amend, and the admissions contained in Plaintiffs' unanswered requests for admissions are deemed admitted.[4]

---

[3] Defendant has not disputed Plaintiffs' assertion that Defendant and its counsel have failed to appear for a scheduled Rule 26(f) phone conference, failed to serve its mandatory initial disclosures, and failed to initiate any discovery of its own during the discovery period. (*See* ECF No. 34 at 2.)

[4] In their Opposition to Defendant's Motion for Leave to Amend, Plaintiffs request that the Court exclude portions of the Declaration of Kevin M. Welch, attached as an exhibit to Defendant's Motion to Amend. (ECF No. 34 at 4–5.) In light of the Court's denial of Defendant's motion, the Court need not address Plaintiffs' request to exclude the Declaration in the context of its consideration of Defendant's motion.

11

B.    Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment on each of the three counts in the Complaint, as well as on Defendant's First, Second, Third, Eighth, and Ninth Affirmative Defenses, and on Plaintiffs' claim for damages.  (ECF No. 27 at 1.)  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it might affect the outcome of the litigation, and a dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The summary judgment inquiry . . . scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."  *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

The party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  To defeat summary judgment, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial."  *Id.* at 324. The nonmoving party must support its assertions by citing to particular parts of the record, such as affidavits, depositions, answers to interrogatories, and admissions on file.  Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at 324.  When the nonmoving party bears the burden of proof on an issue, the moving party is entitled to judgment as a matter of law if the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case."  *Id.* at 323.

The role of the court is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."  *Liberty Lobby, Inc.*,

12

477 U.S. at 249. A genuine issue for trial exists only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). When reviewing a motion for summary judgment, the court must "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

### 1. Trademark Infringement and Unfair Competition under the Lanham Act (Counts I and II)

The Lanham Act, enacted in 1946, provides "government protection for trademarks by prohibiting infringements upon the rights of trademark holders." *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 167 n.3 (4th Cir. 2006). To establish trademark infringement and unfair competition under the Lanham Act, Plaintiffs must prove that: (i) "it has a valid, protectible trademark;" and (ii) "the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995). Plaintiffs argue that "[t]he uncontroverted evidence shows that Ferrellgas owns valid and protectable trademark rights in the BLUE RHINO mark, and that Defendant's use of the BLUE RHINO marks creates a likelihood of confusion." (ECF No. 27-1 at 15.) In response, Defendant concedes the first element, stating that it "does not dispute [the] existence and validity of Blue Rhino's trademark or the fact that Blue Rhinos [sic] trademark and contact information appeared in several places in the fine print of the warranty language" in the Hex Fireplace owner's manuals. (ECF No. 32 at 6; *see* ECF No. 10 at 1.) Defendant has also effectively conceded the second element because it makes no argument

13

contesting that its admitted use of the BLUE RHINO mark likely caused confusion among consumers,[5] nor does the record contain any evidence to the contrary.

Based on the above, the Court concludes that there are no genuine issues of material fact regarding either element of Plaintiffs' trademark infringement and unfair competition claims under the Lanham Act. Plaintiffs are, therefore, entitled to judgment as a matter of law as to each of these claims.

### 2. *Unfair and Deceptive Trade Practices (Count III)*

Plaintiffs also seek summary judgment on their claim of unfair and deceptive trade practices under N.C. Gen. Stat. §§ 75-1 *et seq.* Under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), unfair methods of competition and unfair or deceptive acts or practices, in or affecting commerce, are unlawful. N.C. Gen. Stat. § 75-1.1. To establish a claim for unfair and deceptive trade practices, Plaintiffs must show: (1) that Defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act was the proximate cause of Plaintiffs' injury. *Bob Timberlake Collection, Inc. v. Edwards*, 626 S.E.2d 315, 322 (N.C. Ct. App. 2006). "An act or practice is unfair if it 'is immoral, unethical, oppressive, unscrupulous, or substantially injurious to

---

[5] "Courts have recognized that a party's failure to address an issue in its opposition brief concedes the issue." *Oliver v. Baity*, 208 F. Supp. 3d 681, 690 (M.D.N.C. 2016). *See Klugel v. Small*, 519 F. Supp. 2d 66, 72 (D.D.C. 2007) (stating "when a party does not address arguments raised by a movant, the court may treat those arguments as conceded"); *Brand v. N.C. Dep't of Crime Control & Pub. Safety*, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) (concluding that "[i]n Plaintiff's brief in response to Defendants' motion for summary judgment, Plaintiff does not address . . . his hostile work environment claim [and in so doing], Plaintiff concedes that he has not stated a hostile work environment claim"); *Hamilton v. Cunningham*, 880 F. Supp. 1407, 1411 (D. Colo. 1995) (stating that the defendant "apparently concedes Plaintiffs' limitations analyses . . . having failed to address either in his brief").

14

consumers' . . . [and] [a]n act or practice is deceptive if it 'has the capacity or tendency to deceive.'" *Id.* at 322–23 (quoting *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981)).

As argued by Plaintiffs, courts have found that North Carolina's UDTPA "prohibits the same type of activity that the Lanham Act prohibits because trademark infringement and false designation undercut the mark holder's goodwill and the consumers' ability to distinguish among products." *Djarum v. Dhanraj Imports, Inc.*, 876 F. Supp. 2d 664, 668 (W.D.N.C. 2012) (quotation omitted). *See Design Res., Inc. v. Leather Indus. of Am.*, No. 1:10CV157, 2014 WL 4159991, at *13 (M.D.N.C. Aug. 19, 2014) (stating that "[c]ourts have held that a violation of the Lanham Act necessarily encompasses a violation of North Carolina's UDTPA"), *aff'd*, 789 F.3d 495 (4th Cir. 2015); *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, No. 1:04CV00977, 2007 WL 2712926, at *15 (M.D.N.C. Sept. 14, 2007) (finding that, since North Carolina's UDTPA "prohibits the same type of activity that the Lanham Act prohibits," defendant violated the UDTPA), *aff'd*, 618 F.3d 417 (4th Cir. 2010). Accordingly, because Plaintiffs are entitled to summary judgment on its claims under the Lanham Act, and because Defendant effectively concedes this issue by failing to make any argument or designating any evidence to the contrary, the Court concludes that Plaintiffs are likewise entitled to summary judgment on its claim of unfair and deceptive trade practices.

### 3. *Plaintiffs' Recovery / Damages*

Plaintiffs contend that, under the Lanham Act, they are entitled to, "at a minimum, a disgorgement of Defendant's profits" from its sale of the BCP Fireplaces. (ECF No. 27-1 at 22.) They also contend that "[t]his is an exceptional case" under the Lanham Act and, as such, they are entitled to treble damages and reasonable attorney's fees. (*Id.* at 23.) Further,

Plaintiffs contend that, under N.C. Gen. Stat. §§ 75-1.1 and 75-16, they are "entitled to a disgorgement of Defendant's profits for Defendant's unfair and deceptive trade practices," in addition to treble damages. (*Id.*) Thus, according to Plaintiffs, they are entitled to a total of $561,210 in damages, plus reasonable attorney's fees. (*Id.* at 23, 24.)

Defendant, on the other hand, argues that while it does not dispute its liability in this action, "the issue of damages, the amount, the method of calculation, and the appropriate numbers are very much in dispute and is not ripe for Summary Judgment at this time." (ECF No. 32 at 7.) In support of its argument, Defendant has attached the following documents to its opposition brief: (i) Declarations of Defendant's counsel, Kevin Welch and Kenneth Otis, (ECF Nos. 32-1–32-2, 32-5); and (ii) a Declaration of Joseph Guido, Defendant's Director of Operations, along with a copy of Defendant's Amended Responses to Plaintiffs' First Set of Requests for Admissions,[6] (ECF Nos. 32-3–32-4). As discussed earlier, due to Defendant's failure to make the mandatory Rule 26 initial disclosures, and the Court's finding that the failure was not substantially justified nor harmless,[7] evidence offered by Defendant in support of its opposition to Plaintiffs' motion will be excluded pursuant to Rule 37(c) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is *not allowed to use that information or witness to supply evidence on a motion*, at a hearing, or at a trial, unless the failure was substantially justified or is harmless" (emphasis added)). Accordingly, to the extent Defendant seeks to rely

---

[6] This Court has denied Defendant's Motion for Leave to Amend; as such, Plaintiffs' unanswered Requests for Admissions are deemed admitted. (*See supra* p. 11.)

[7] *See supra* § II. A. 1.

on these declarations and accompanying documents as factual evidence on the issue of Plaintiffs' recovery in this case, these documents will be deemed stricken from the record and will not be considered by the Court.

Pursuant to § 1117(a) of the Lanham Act, a prevailing plaintiff "shall be entitled, . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) costs of the action." 15 U.S.C. § 1117(a). "In assessing profits the plaintiff shall be required to prove defendant's sales only, [and] defendant must prove all elements of cost or deduction claimed." *Id.*

Here, Plaintiff has met its burden of proving that Defendant sold 2,600 BCP Fireplaces, each at a price of $71.95,[8] and each accompanied by an owner's manual containing the infringing BLUE RHINO mark. (ECF No. 27-2 at RFA No. 35.) Despite Defendant's contention that the profit calculation here should be based on the sale of 414 BCP Fireplaces and should include a deduction for certain "average" costs, (ECF No. 32 at 10), there is no competent evidence before the Court to substantiate this claim.[9] Nor does Defendant explain the particulars of these purported "average" costs. *See Entrepreneur Media, Inc. v. JMD Entm't Grp., LLC*, 958 F. Supp. 2d 588, 597 (D. Md. 2013) (finding that, where defendants have failed to provide evidence to rebut the alleged amount of its gross sales, plaintiff was entitled to an

---

[8] Given the Court's earlier finding that Plaintiffs' unanswered requests for admissions are deemed admitted, the facts which are the subject of Plaintiffs' Requests for Admissions are, therefore, conclusively established. *See In re Carney*, 258 F. 3d 415, 420 (5th Cir. 2001) ("Since Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted, they cannot be overcome at the summary judgement [sic] stage by contradictory affidavit testimony or other evidence in the . . . record."); Fed. R. Civ. P. 36(a).

[9] As previously discussed, based on its failure to make its required Rule 26 initial disclosures, Defendant is precluded from offering evidence in support of its contentions regarding Plaintiffs' recovery. *See supra* §§ II. A. 1, 3; Fed. R. Civ. P. 37(c)(1).

award of profits equal to defendant's estimated gross sales); *Hosp. Int'l v. Mahtani*, No. 2:97CV87, 1998 WL 35296447, at \*9 (M.D.N.C. Aug. 3, 1998) ("If the defendant provides no evidence from which the Court can determine the amount of any cost deductions, the defendant's profits are usually held to be equal to the defendant's sales."). Further, "[a]ny doubts about the actual amount of gross sales or profits will be resolved against the infringing party." *Nutrivida, Inc. v. Inmuno Vital, Inc.*, 46 F. Supp. 2d 1310, 1316 (S.D. Fla. 1998). The Court, thus, concludes that Defendant's argument regarding the profit calculation is unsupported, unreasonable, and inadequate.

The Court further concludes that Plaintiffs have satisfied their burden of proving that Defendant's gross sales of the BCP Fireplaces total $187,070.00. However, under the Lanham Act, the Court, in its discretion, may adjust the amount of Plaintiffs' recovery based on profits, "up or down, but only if it finds the amount of recovery to be either 'inadequate or excessive,' and then only insofar as the adjustment is determined to be just and compensatory, not punitive." *Ga.-Pac. Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 718 (4th Cir. 2015) (quoting 15 U.S.C. § 1117(a)). *See JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 28 F. App'x 207, 215 (4th Cir. 2002) (unpublished per curiam decision) ("An award of profits under the [Lanham] Act is committed to the discretion of the district court."); *accord Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1241 (11th Cir. 2008) (explaining that the Lanham Act "confers upon district courts wide discretion in determining a just amount of recovery for trademark infringement" (quotation omitted)). In light of this wide discretion, the Court finds that, here, $187,070.00 – the amount of proven profits, based on Defendant's gross sales – would constitute an excessive recovery in that the Court is aware that Defendant likely incurred some

18

costs associated with the sale of the BCP Fireplaces. The Court will, therefore, make a downward adjustment of 66% of the gross sales amount, resulting in an award of $61,733.10, representing 33% of Defendant's gross sales.

The Court finds this downward adjustment reasonable because, although there is no competent evidence before the Court regarding Defendant's allowable costs or other deductions, as stated, the Court recognizes that Defendant likely incurred some costs and/or expenses related to its sale of the BCP Fireplaces. *See Hosp. Int'l*, 1998 WL 35296447, at *10 (recognizing that even though defendant "failed to meet his burden of proving any expenses," defendant "surely had some expenses [so it] seems unreasonable to award all sales as profits even though the Lanham Act permits that result").

Further, where an infringing party has failed to meet its burden of proving deductible costs and expenses, courts have exercised their discretion and adjusted the gross sales amount in order to fashion an appropriate remedy. *See, e.g., Sethness-Greenleaf, Inc. v. Green River Corp.*, Nos. 89 C 9203, 91 C 4373, 1995 WL 571415, at *4 (N.D. Ill. Sept. 21, 1995) (concluding that, where defendant failed to prove its costs and expenses, the court will award plaintiff 20% of defendant's gross sales, which is "the general and customary average profit margin sought by businesses"); *Hosp. Int'l*, 1998 WL 35296447, at *10–11 (finding that, despite defendant's failure to produce evidence of deductible expenses, "an amount equal to twenty-five percent (25%) of [defendant's] known gross sales is a reasonable determination of the amount of [defendant's] profits"); *Axiom Worldwide, Inc. v. Excite Med. Corp.*, 591 F. App'x 767, 777–78 (11th Cir. 2014) (unpublished) (holding that, where defendant failed to prove any reduction in profits was warranted, district court did not abuse its discretion in setting damages at the

19

midpoint of the proven profit range); *Nutrivida*, 46 F. Supp. 2d at 1316 (awarding $10,524,111 of $12,524,111 in gross profits on sales, representing approximately 84% of the infringing party's gross profits, where the infringing party failed to provide evidence of costs and expenses claimed). Moreover, because the Court is mindful that any recovery must "constitute compensation and not a penalty," 15 U.S.C. § 1117(a), an award of 33% of Defendant's gross sales is just under the circumstances. The Court, therefore, concludes that Plaintiff is entitled to recover $61,733.10, representing 33% of the amount of Defendant's profits related to the sale of 2,600 BCP Fireplaces.

The Lanham Act also provides that, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." *Id.* An "exceptional" case is one in which "the defendant's conduct was malicious, fraudulent, willful or deliberate in nature. . . . In other words, a prevailing plaintiff must show that the defendant acted in bad faith." *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001) (quotation omitted). The decision to grant attorney's fees in exceptional cases lies within the sound discretion of the district court. *See Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 108 n.6 (4th Cir. 1991) (explaining that under the Lanham Act, "attorney's fees are not awarded as a matter of right; they are within the discretion of the trial court").

The record reflects that, upon learning of the Plaintiffs' infringement allegations, Defendant "immediately informed Amazon.com to place [Defendant's] Hex Fireplace product on sales hold so that no further units were shipped to customers." (ECF No. 11 ¶ 2.) Defendant also "ceased displaying, distributing, shipping and/or selling products accompanied by Defendant's owner's manual referencing Ferrellgas's BLUE RHINO mark

20

and Blue Rhino's name, website address, or telephone number." (*Id.* ¶ 4.) Such conduct does not constitute bad faith, nor does such conduct rise to the level of being "malicious, fraudulent, willful or deliberate in nature," *Doughney*, 263 F.3d at 370 (quotation omitted). The Court, therefore, finds that this case is not "exceptional" for purposes of awarding attorney's fees under the Lanham Act.[10]

Under N.C. Gen. Stat. § 75-16, "damages assessed pursuant to [the UDTPA] are trebled automatically." *Pinehurst, Inc. v. O'Leary Bros. Realty, Inc.*, 338 S.E.2d 918, 924 (N.C. Ct. App. 1986); *see Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 168 (4th Cir. 2012) (affirming district court's trebling of plaintiff's profits, under § 75-16, for violation of North Carolina's UDTPA); *Pearce v. Am. Def. Life Ins. Co.*, 343 S.E.2d 174, 180 (N.C. 1986) (explaining that § 75-16 "mandates the automatic assessment of treble damages once a violation of [the UDTPA] is shown"). Therefore, having granted summary judgment for Plaintiffs as to their claim against defendant under North Carolina's UDTPA, pursuant to N.C. Gen. Stat. § 75-16, the Court concludes that the damages amount of $61,733.10 shall be trebled. Plaintiff shall be entitled to a total damages amount of $185,199.30 ($61,733.10 x 3).

In light of the Court's ruling on each of Plaintiffs' claims for summary judgment, the Court will deny as moot Plaintiffs' motion for summary judgment as to Defendant's remaining affirmative defenses.

---

[10] Plaintiffs appear to also contend that "[t]his is an exceptional case under 15 U.S.C. § 1117(a) . . . which entitles Plaintiffs to treble damages . . . ," (ECF No. 27-1 at 23). In light of the Court's finding that this is <u>not</u> an exceptional case under the Lanham Act, the Court need not address this argument. The Fourth Circuit has, however, recognized that where, as here, Plaintiffs seek a disgorgement of Defendant's profits, "treble damages . . . are not authorized by § 1117(a) for a recovery based on profits." *Georgia-Pacific*, 781 F.3d at 719.

C.     Plaintiffs' Motion for Sanctions

Plaintiffs move for sanctions to be imposed on Defendant "and its counsel for Defendant's false representation, made in a statement filed with the Court under penalty of perjury, regarding corrective measures it promised to take to address Defendant's acts of trademark infringement and unfair competition." (ECF No. 29 at 1.) Plaintiffs specifically "request that the Court award Plaintiffs their attorney's fees and costs incurred in filing Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction" ("TRO Motion") and the instant Motion for Sanctions. (*Id.*)

As an initial matter, Rule 7.3(k) of this Court's Local Rules states:

> The failure to file a brief or response within the time specified in this rule *shall constitute a waiver of the right thereafter to file such brief or response,* except upon a showing of excusable neglect. . . . If a respondent fails to file a response within the time required by this rule, *the motion will be considered and decided* as an uncontested motion, and ordinarily will be granted without further notice.

L.R. 7.3(k) (emphasis added). Here, Plaintiffs' motion was filed on January 7, 2017, and as reflected on the Court's electronic docket, Defendant's Response was due to be filed by January 30, 2017. (*See* ECF No. 29, Docket Entry Text.) Defendant failed to file its Response by the deadline.[11] Instead, Defendant filed its Opposition to Plaintiffs' Motion for Sanctions, *one-week later*, on February 6, 2017, (ECF No. 37), without, first, seeking either an extension of the response deadline from the Court, or leave of Court to file its response out of time. Also, nowhere in Defendant's response brief does it offer an explanation or excuse for its failure to comply with the Court-imposed response deadline. Based on Defendant's failure to file a

---

[11] On January 31, 2017, Plaintiffs filed a Notice of Non-Opposition by Defendant to Plaintiffs' Motion for Sanctions. (ECF No. 36.)

timely response or provide any showing of excusable neglect, Defendant will be deemed to have waived its right to respond as provided in Local Rule 7.3(k). *See Daye v. Potter*, 380 F. Supp. 2d 718, 721 (M.D.N.C. 2005) (finding that, by "fail[ing] to show 'excusable neglect' or any sufficient basis for failing to timely file a Response [to defendant's motion to dismiss] . . . Plaintiff will be deemed to have waived his right to respond as provided in Local Rule 7.3(k)"). As a result, Plaintiffs' Motion for Sanctions could be granted on this ground alone, "as a matter of course pursuant to Local Rule 7.3(k)." *Id.* However, in the interest of justice, the Court will consider the merits of the instant motion to determine whether sufficient grounds exist to support the requested relief.

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). These inherent powers "must be exercised with the greatest restraint and caution," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993), and they include the power to impose sanctions on parties who abuse the judicial process, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (explaining that "[t]he policy underlying this inherent power of the courts is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth"). Even though fee-shifting is prohibited in most cases, "in narrowly defined circumstances[12] federal courts have inherent power to assess attorney's

---

[12] "A court possesses the inherent power to sanction a party with an assessment of attorney's fees in three situations: (1) when a party's litigation efforts directly benefit others; (2) when there has been willful disobedience of a court order; and (3) when a party has acted in bad faith, vexatiously, wantonly,

fees against counsel." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980). Specifically, as is relevant here, a court may assess attorney's fees when a party or its counsel has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45–46 (quotation omitted). "Bad faith may be found . . . in the conduct of the litigation." *Roadway Express*, 447 U.S. at 766 (quotation omitted).

Here, after Plaintiffs filed their TRO Motion on April 1, 2016, this Court scheduled the motion for hearing on April 12, 2016. On April 7, 2016, Defendant filed its Opposition to Plaintiffs' TRO Motion, accompanied by the supporting, sworn Affidavit of Kiet Law ("Law Affidavit"), Chief Executive Officer of Defendant Sky Billiards. (ECF Nos. 10, 10-1.) In this Affidavit, Mr. Law stated that upon learning of Plaintiffs' allegations of Defendant's infringing behavior, Defendant told Plaintiffs that it "would immediately remove and destroy all remaining owner's manuals within its control and future shipments would not include [the] owner's manual to eliminate the complained-of allegedly infringing behavior." (ECF No. 10-1 ¶ 9.) Mr. Law further stated that "[a]fter agreeing to eliminate the alleged infringing behavior, Sky Billiards requested Plaintiff[s] withdraw this Motion for a Temporary Restraining Order." (*Id.* ¶ 10.) Then, on April 11, 2016, Defendant filed a sworn Supplemental Affidavit of Kiet Law in Support of Defendant's Opposition to Plaintiffs' TRO Motion ("Supplemental Law Affidavit"). (ECF No. 11.) In his Supplemental Affidavit, Mr. Law, represented the following to Plaintiffs and to the Court:

> Sky Billiards will *immediately* send a letter to inform all of its customers who have already purchased Sky Billiards, Inc.'s Hex Fireplace product . . . that the product they purchased from Sky

---

or for oppressive reasons." *Kilborn v. Bakhir*, 70 F. App'x 692, 693 (4th Cir. 2003) (unpublished per curiam decision) (citing *Chambers*, 301 U.S. at 44–46).

Billiards did not originate from Ferrellgas or Blue Rhino and that such customers should not contact Ferrellgas or Blue Rhino for product assembly, registration, replacement parts, returns, or warranty claims, and that Ferrellgas and Blue Rhino have no obligation to provide service or assistance with product assembly, registration, replacement parts, returns, or warranty claims.

(*Id.* ¶ 6 (emphasis added).)

Plaintiffs argue that they expressly relied on Defendant's assurances, as stated above, without which, "Plaintiffs would not have withdrawn their request for injunctive relief in April 2016." (ECF No. 29-1 at 3.) This contention is supported by Plaintiffs' Notice of Withdrawal, filed with the Court, which quotes the Supplemental Law Affidavit and states that Plaintiffs were withdrawing their TRO Motion, "[b]ased on these representations provided by sworn affidavit." (ECF No. 12 at 2.) Further, email correspondence between counsel for the parties shows that in the days following the filing of Plaintiffs' TRO Motion, the parties, through their counsel, conferred about possible terms for resolving the matter prior to a hearing, and Defendant's counsel told Plaintiffs' counsel that Defendant "intends to provide its customers with a letter to mitigate any post sale confusion." (ECF No. 29-4 at 2.) Defendant's written notification to consumers, however, was not distributed until December 30, 2016, (*see* ECF No. 29-2 at 2), over eight (8) months *after* the filing of Mr. Law's Affidavit with the Court, and over eight (8) months *after* Plaintiffs' withdrawal of its motion for preliminary injunctive relief. Despite its representation to the Court and to Plaintiffs that it would "immediately" notify its consumers, neither Defendant nor its counsel took any steps during the intervening eight months to notify the Court, Plaintiffs, or Plaintiffs' counsel of the delay. This lack of communication continued even after Plaintiffs' counsel contacted counsel for Defendant seeking an explanation for the "apparent delay in sending the corrective communication."

25

(ECF No. 29-3 at 2.) As of the filing of the instant motion, Plaintiffs' counsel states that she "has yet to receive an explanation, or any response at all for that matter, from Defendant." (ECF No. 29-1 at 6.)

The Court finds that, here, the conduct of Defendant and its counsel constitutes an abuse of the judicial process which disrupted this litigation in bad faith. In this case, the Court scheduled a hearing on Plaintiffs' TRO Motion for April 12, 2016. One day before the scheduled hearing, on April 11, 2016, Defendant filed the Supplemental Law Affidavit. (ECF No. 11.) Based on that Affidavit, in which Defendant represented to the Court that, among other things, it will "immediately" send a corrective letter to its BCP Fireplace purchasers, (*id.* ¶ 6), Plaintiffs, on that date, notified the Court that they would withdraw their TRO Motion, after which the Court cancelled the scheduled hearing. (04/11/2016 Docket Entry Text; *see* ECF No. 12.) Despite its representation to the Court and the Court's subsequent cancellation of the scheduled hearing, however, Defendant failed to "immediately" send the corrective letter to its customers thus, rendering Mr. Law's sworn supplemental affidavit false and, at the very least, reckless. *See Shaffer Equip. Co.*, 11 F.3d at 462 (recognizing that "when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process, the court has the inherent power to [impose sanctions]"); *SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, No. 3:09cv529, 2011 WL 1225989, at \*14 (E.D. Va. Mar. 29, 2011), *aff'd sub nom. SunTrust Mortg., Inc. v. United Guar. Residential Ins. Co. of N.C.*, 508 F. App'x 243 (4th Cir. 2013) (quoting *Chambers*, 501 U.S. at 45–46) ("[I]t is an abuse of the judicial process to conduct litigation 'in bad faith, vexatiously, wantonly or for oppressive reasons.' There is no doubt that the inherent power can be used

26

to sanction such abuses."). Also, at no point did Defendant or its counsel, who prepared and filed the supplemental affidavit on behalf of Defendant, take any steps to correct Defendant's misrepresentation to the Court. *See Bd. of License Comm'rs of Tiverton v. Pastore*, 469 U.S. 238, 240 (1985) ("It is appropriate to remind counsel that they have a continuing duty to inform the court of any development which may conceivably affect the outcome of the litigation." (quotation omitted)); *Shaffer Equip. Co.*, 11 F.3d at 463 (explaining that "our adversary system depends on a most jealous safeguarding of truth and candor"); *Interstate Narrow Fabrics, Inc. v. Century USA, Inc.*, No. 1:02CV00146, 2006 WL 435726, at *6 (M.D.N.C. Feb. 22, 2006) ("Intentional, or even reckless, misrepresentations to a court is bad faith behavior that the Court has a clear interest in deterring.").

The Court, therefore, concludes that the above-described conduct of Defendant and its counsel in this litigation constituted bad faith conduct warranting the imposition of sanctions under the Court's inherent powers. *See Roadway Express*, 447 U.S. at 766 ("The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes." (footnote omitted)). Accordingly, the Court, in its discretion, will grant Plaintiffs' motion for sanctions against Defendant and its counsel. The Court will award Plaintiffs their attorney's fees and costs incurred in filing Plaintiffs' TRO Motion as well as the instant Motion for Sanctions, the total award amount of which shall be determined through subsequent submissions as ordered below.

For the reasons stated herein, the Court enters the following:

Case 1:16-cv-00259-LCB-JLW   Document 39   Filed 07/24/17   Page 27 of 29

## ORDER

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment, (ECF No. 27), is GRANTED IN PART as to Plaintiffs' claims of trademark infringement, unfair competition, and unfair and deceptive trade practices. Plaintiffs' motion is DENIED AS MOOT as to Defendant's remaining affirmative defenses.

IT IS FURTHER ORDERED that Defendant shall pay to Plaintiffs the sum of $61,733.10 in Defendant's profits, which sum shall be trebled pursuant to the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-16, for a total award amount to be paid to Plaintiffs by Defendant of $185,199.30, which sum does not include the amount for sanctions which shall be addressed below.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Sanctions, (ECF No. 29), is GRANTED and Defendant and its counsel are hereby ordered to pay Plaintiffs their reasonable attorney's fees and costs incurred in filing Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction as well as Plaintiffs' Motion for Sanctions, the total award amount of which shall be determined through subsequent submissions to the Court. Plaintiffs shall submit materials supporting its request for attorney's fees and costs within fourteen (14) days of the entry of this Order. Defendant shall provide its response within seven (7) days of the filing of Plaintiffs' submission. Upon consideration of the parties' submissions, the Court shall enter an Order of the award amount with respect to sanctions.

IT IS FURTHER ORDERED that Defendant's Motion for Leave to Amend Defendant's Responses to Plaintiffs' First Set of Requests for Admissions, (ECF No. 31), is DENIED.

An Order and Judgment dismissing this action with prejudice shall be entered upon the conclusion of all matters before the Court, including entry of the Order for sanctions as outlined herein.

This, the 24th day of July, 2017.


            /s/ Loretta C. Biggs
United States District Judge

Case 1:16-cv-00259-LCB-JLW    Document 39    Filed 07/24/17    Page 29 of 29